IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

**EXPEDITED PARTNERS, LLC**

    Plaintiff,

v.

**AIM BRANDS, LLC, MARCUS GIBBS, and CHRISTOPHER NOWLIN,**

    Defendants.

Case No. 5:22-cv-05207-TLB

**COMPLAINT**

COMES NOW, Plaintiff Expedited Partners, LLC, by and through its undersigned attorneys, and for its cause of action states and alleges as follows:

**JURISDICTION AND VENUE**

1. This action is between citizens of different states and there is complete diversity of citizenship among the parties. Additionally, the amount in controversy is well above the federal threshold of $75,000. Thus, this Court has jurisdiction over the subject matter of this lawsuit pursuant 28 U.S.C. § 1332(a).

2.  Venue is proper in this Court because many of the wrongful acts complained herein occurred within this District.

## PARTIES

3.  Plaintiff Expedited Partners, LLC ("Plaintiff" or "Expedited"), is a limited liability company. The members of Expedited are BioBarrier360, LLC, IntuitChem, LLC, and GardnerBarnes, LLC. BioBarrier360, LLC is a Texas limited liability company whose sole member is Courtney Freedman, who is domiciled in Tennessee, and thus, it is a citizen of Tennessee. IntuitChem, LLC is a Tennessee limited liability company whose two (2) members are Stuart Breakstone and Pattra Womack, who are both domiciled in Tennessee, and thus, it is a citizen of Tennessee. GardnerBarnes, LLC is a Delaware limited liability company whose sole member is Greg Shindler, who is domiciled in Texas.

4.  Defendant, AIM Brands, LLC ("AIM"), is a limited liability company whose sole living member is Christopher Nowlin. Mr. Nowlin is a citizen of Arkansas. Thus, for purposes of 28 U.S.C. § 1332, AIM is a citizen of Arkansas. AIM has its principal place of business at 1000 Westpark Drive, Suite 18, Bentonville, Arkansas 72712.

12. Defendant Christopher Nowlin ("Nowlin") is a citizen of Arkansas and is believed to reside within this District. Nowlin is the managing member of AIM.

13. Defendant Marcus Gibbs ("Gibbs") is a citizen of Arkansas and is believed to reside within this District. Gibbs is the Vice-President of Sales for AIM.

# FACTS

14. Expedited was organized on or about May 1, 2020, to purchase and sell personal protective equipment ("PPE"), such as masks, gloves, gowns, and sanitizer during the COVID-19 pandemic.

15. In May of 2020, Expedited wished to buy millions of NIOSH-certified masks, which are sometimes referred to as N95 masks. NIOSH-certified masks are a more desirable product, because masks that have been certified for compliance with NIOSH standards have a substantially larger market, are in significantly higher demand, and therefore, command higher prices than non-certified masks.

16. In order to purchase N95 product for resell, Expedited entered into an agency agreement with a company known as Proten Performance, LLC, which had a predecessor entity known as Corporate Outfitters, Inc. (collectively, these two companies will be referred to in this complaint as "Proten").

17. On or about May 28, 2020, Proten, as Expedited's authorized agent, entered purchase negotiations with AIM to purchase PPE masks for Expedited.

18. In these negotiations beginning in May of 2020 and extending into June of 2020, AIM, through Nowlin, and Gibbs the following false representations of material fact were made:

    a.    That AIM was an exclusive dealer of Kimberly-Clark NIOSH-certified masks.

    b.    That if Expedited would purchase 2 million non-certified masks at $1.81 per mask, AIM would then provide and sell to Expedited an

        additional 22 million of NIOSH-certified masks from its next allotment of NIOSH-certified masks to be made available to AIM by Kimberly-Clark at $2.15 per mask.

19. These representations were statements of material facts. Indeed, the terms for purchase of 2 million non-certified masks and then another 22 million NIOSH-certified masks involved millions upon millions of dollars, and therefore, these purported facts were obviously material.

20. AIM, Nowlin, and Gibbs each knew or believed these representations were false or knew or believed that they did not have a sufficient basis of information to make the representations. Indeed, each of them knew that AIM was not an exclusive dealer of Kimberly-Clark NIOSH-certified masks and would also not be able to deliver 22 million NIOSH-certified masks to Expedited in the summer months of 2020 or even later that year, or at least knew or believed they did not have a sufficient basis of information to make these representations.

21. Expedited relied upon these false and misleading representations material fact by AIM, Nowlin, and Gibbs by purchasing 2 million of the less desirable and harder to sell non-certified masks at $1.81 per mask, a total sum of more than $3.6 million, and based upon AIM's, Nowlin's, and Gibbs's materially false and misleading representations that the 2 million purchase was required for Expedited to thereafter purchase 22 million NIOSH-certified masks from AIM at $2.15.

22. AIM, Nowlin, and Gibbs were motivated to deceive Expedited for two reasons. First, they saw a profit opportunity to sell 2 million of the less desirable and harder to sell mask by deceiving Expedited into believing it would thereafter purchase 22 million of the more desirable and more profitable NIOSH-certified masks from AIM.

And second, AIM, Nowlin and Gibbs and also knew they could sell millions of NIOSH-certified masks directly to medical centers and providers, as well as other large end-use consumers at a much greater profit than selling these 22 million NIOSH-certified masks to Expedited particularly as the COVID-19 pandemic grew and demand for such mask multiplied.

23. On June 25, 2020, Expedited received from AIM a "proof of life" video showing Kimberly-Clark face masks being inspected by a third-party (apparently in anticipation of purchasing the masks), prompting Expedited to confirm its 22 million NIOSH-certified mask purchase from AIM.

24. On that day, during a conference call involving AIM and Expedited, Nowlin again falsely represented that AIM was selling 22 million NIOSH-certified face masks to Expedited as represented based upon Expedited's purchase from AIM of the 2 million non-certified masks from AIM, and that he was just waiting on AIM's allocation schedule from Kimberly-Clark.

25. On or about June 29, 2020, Expedited, through one of its owners Joe Freedman, wrote an email to Nowlin, which said:

> "Kit, We have a few clients that would like to get into production for the Niosh N95s. Can you please send us the SOP so we can start the process."

Nowlin replied:

> "Thanks Joe. I will get info together in the morning to share with you."

26. With the false misleading assurance of an imminent production schedule for the NIOSH-certified masks, Expedited continued to work on identifying customers for the NIOSH-certified masks. Several customers sent Expedited purchase orders seeking

to purchase the NIOSH-certified masks at a price that would return a profit for Expedited.

27.   On July 7, 2020, Expedited, again through Freedman, asked AIM, through Nowlin, for an update on allocation of NIOSH-certified face masks for the end of July. Mr. Nowlin responded:

"You bet Joe.  I anticipate an update on our partner process this week."

28.   Again, on July 18, 2020, Expedited requested an update on allocation of NIOSH-certified face masks from AIM and Nowlin but, given the delays, this time for the month of August.

29.   On July 20, 2020, AIM, through Nowlin, responded that he had been working through forecasts for availability of the NIOSH-certified face masks:

> My team will complete our forecasts this week and I will have an offer with expected delivery windows and volume for us to discuss by next week (I am shooting for this week).  I will tell more when we get on the phone together, but we still have some forecasting challenges and I want to make sure everything makes sense for you given our limited ability to control production. If you have not heard from me Thursday of this week for a meeting time, please ping me.  I appreciate your patience and your continued willingness to partner.

30.   Thursday, July 23, 2020 arrived without further response from AIM or Nowlin.  When asked for an update, Nowlin responded:

"Thank you sir.  I'll get something together for the morning."

31.   AIM, Nowlin, and Gibbs continued with excuses, until after several months of false assurances Expedited asked AIM, through Nowlin, to accept the return of the non-NIOSH certified masks it purchased on the false and misleading statements and assurances that Expedited would be able to purchase 22 million NIOSH-certified face masks from AIM.

32. AIM refused to accept the return of the non-NIOSH-certified masks, and never delivered on its, Nowlin's, or Gibbs's representations that once Expedited purchased the 2 million non-certified masks it would have the first right to purchase 22 million of NIOSH-certified masks from AIM.

33. AIM's, Nowlin's, and Gibbs's false and misleading representations were a classic "bait and switch" scam.

34. Indeed, on October 21, 2020, AIM issued a press release announcing it was offering more than 10 million NIOSH-certified face masks for direct sale to medical centers, providers, and other large-scale end users.

## CAUSES OF ACTION

### COUNT I

**ARKANSAS DECEPTIVE TRADE PRACTICES ACT (Ark. Code § 4-88-101, *et seq.*)**

58. Expedited re-alleges and incorporates each paragraph above word-for-word as if fully stated herein.

59. Each of Defendants are a "person" for the purposes of the Arkansas Deceptive Trade Practices Act pursuant to Ark. Code Ann. § 4-88-102(3) (or "ADTPA").

60. Personal protective equipment, including masks, are "property" within the meaning of Ark. Code Ann. § 4-88-102(6).

61. The wrongdoing specifically alleged against each of the Defendants violated Ark. Code Ann. § 4-88-107 (3) and (5) in that the materially false and misleading

representations alleged herein were made with the intent not to sell the NIOSH-certified and non-certified masks as advertised, and further, was the unlawful employment of a bait-and-switch marketing scheme consisting of the attractive but insincere offer to sell 22 million NIOSH-certified masks to Expedited if it would first purchase 2 million of non-certified masks, but such offer was insincere and AIM, Gibbs, and Nowlin did not intend to sell as the NIOSH-certified masks even with the 2 million non-certified masks tie-in sale demanded by AIM, Gibbs, and Nowlin.

62.     Additionally, AIM, Gibbs and Nowlin violated Ark. Code Ann. § 4-88-107(a)(10), by engaging in an "unconscionable, false, or deceptive act or practice in business, commerce, or trade" as alleged above.

63.     Defendants' violations of the ADTPA proximately caused Expedited to suffer millions of dollars in actual financial losses through its purchase of the 2 million non-certified masks and further financial suffrage in other actual financial losses related to the inability to carry through with purchase orders from its customers for the NIOSH-certified masks.

## COUNT II

## UNJUST ENRICHMENT AGAINST AIM – DISGORGMENT OF PROFITS

68.     Expedited repeats the allegations stated in the above paragraphs as if fully set forth herein.

69.     AIM has been unjustly enriched, because it was able to obtain a higher sales price from Expedited for the non-NIOSH-certified masks than it otherwise would have

by insincerely offering the sale and delivery of 22 million NIOSH-certified masks at the price referenced above. AIM should pay to Expedited the difference between the actual sales price of the non-NIOSH-certified masks and the price at which the masks would have been sold, absent the commitment to sell an additional twenty-two million (22,000,000) NIOSH-certified face masks.

70. AIM has also been unjustly enriched to the extent that it has sold NIOSH-certified face masks to parties other than Expedited at a higher price. As such, AIM should be ordered to disgorge all profits from its sales of 22 million NIOSH-certified face masks to others.

71. Expedited is entitled to recover such amounts by which AIM has been unjustly enriched to the detriment of Expedited.

## COUNT III

## FRAUD

82. Expedited re-alleges and incorporates each paragraph above word-for-word as if fully stated herein.

83. Defendants made false representations of material fact when they represented, advertised, and promoted the sale of personal protective equipment to Expedited, and also fraudulently and materially omitted facts that were required to be revealed to Expedited due to its relationship with Expedited.

84. AIM, Gibbs, and Nowlin each either knew or believed that the representations alleged herein were false or knew of believed that they did not have a sufficient basis of information to make the representation.

85. By their actions and statements, AIM, Gibbs, and Nowlin intended to induce Plaintiff to act in reliance upon their material misrepresentations.

86. As alleged above, Expedited justifiably relied upon Defendants' false and material misrepresentations, and its relationship with AIM to properly reveal all material facts in the underlying transactions by purchasing the 2 million non-certified masks as a condition of purchasing the 22 million NIOSH-certified masks from AIM, and by not attempting to purchase NIOSH-certified masks from other potential sellers.

87. Defendants' false and misleading misrepresentations and material omissions substantially influenced and caused Expedited to sustain substantial financial harm and tens of millions of dollars monetary damages.

## JURY TRIAL DEMANDED

88. Expedited respectfully demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Expedited Partners, LLC, respectfully prays for this Court to enter Judgment in its favor and provide:

a. an award of damages in favor of Expedited and against Defendants for the damages suffered as a result of Defendants' wrongdoing, and other remedies available by law, including penalties such as treble damages and/or punitive damages, and attorneys' fees;

b. in the alternative to paragraph immediately above, an award in favor of Expedited and against AIM for all amounts AIM has been enriched as a result of its wrongdoing as provided by law; and,

c. any and all other relief that this Court may deem just and proper, whether such relief sounds in law or equity.

Respectfully submitted,

*[signature]*

Scott Poynter, AR Bar No. 90077
Daniel Holland, AR Bar No. 2019237
**POYNTER LAW GROUP**
407 President Clinton Ave., Suite 201
Little Rock, AR 72201
scott@poynterlawgroup.com
(501) 812-3943

Michael B. Phillips, Ark Bar No. 2006255
**MOFFITT & PHILLIPS, PLLC**
1501 N. University Ave., Ste. 465
Little Rock, AR 72201
501.436.8736 *direct dial/efax*
mphillips@moffittphillips.com